**CV-09 4042**

IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★ SEP 18 2009 ★

LONG ISLAND OFFICE

FEUERSTEIN, S
WALL, M.J.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
THOMAS HUGHES,                                  Docket No.:

           Plaintiff,                      **Verified Complaint**

   -against-                                     *Jury Trial Demanded*

NEW YORK STATE UNIFIED COURT SYSTEM,
KEVIN ANDERSON, In his Official Capacity and
Individually, and ALEX PASTORI, In his Official Capacity
and Individually,
           Defendants.
-----------------------------------------------------------------X

       Plaintiff THOMAS HUGHES, by and through his attorneys, The Law Office of Steven A. Morelli, P.C., allege, upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

### PRELIMINARY STATEMENT

1.    This action is brought against all Defendants pursuant to The Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 *et seq.*, the New York Executive Law, The Human Rights Law § 290 *et seq*; and contains any other causes of action which can reasonably be inferred from the facts set forth herein, to redress violations of the Plaintiff's rights as guaranteed by the laws of the United States and the State of New York prohibiting unlawful discrimination and retaliation.

2.    This action is also brought pursuant to 42 U.S.C. § 1983 to redress certain violations of the Plaintiff's constitutional rights including his rights to equal protection of the laws and freedom of speech secured to him by the Fourteenth and First Amendments to the Constitution of the United States.

## JURISDICTION

3. This Court has original jurisdiction over the Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 & 1343, and supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4. Venue is proper pursuant to 28 U.S.C. § 1391.

5. All conditions precedent to filing suit have been fulfilled. To wit, the Plaintiff filed timely Complaints with New York State Division of Human Rights which was cross-filed with the Equal Employment Opportunity Commission, on or about October 18, 2007, bearing federal charge number 16GA800744. The EEOC issued Plaintiff Hughes a Notice of Right to Sue, which Plaintiff received on or about June 25, 2009. This action was filed within 90 days of Plaintiff's receipt of the Notice of Right to Sue. Annexed hereto, and hereby incorporated into this Complaint, as Exhibit A, is a copy of Plaintiff's Notice of Right to Sue.

## PARTIES

## PARTIES

6. Plaintiff THOMAS HUGHES, at all relevant times, was and still is a resident and domiciliary of the County of Nassau in the State of New York. Hughes resides at 2 Flo Drive, Syosset, New York, 11791.

7. Defendant THE NEW YORK STATE UNIFIED COURT SYSTEM, at all relevant times, was and still is an agency of the government of the State of New York. The Office of the Court Administration, the division of the New York State Unified Court System responsible for the supervision of Court personnel is located at 25 Beaver Street, New York, NY 10004.

8. Defendant KEVIN ANDERSON, at relevant times mentioned, was Hughes's supervisor and was employed by the NEW YORK STATE UNIFIED COURT SYSTEM.

9. Upon information and belief, Anderson resides at 58 Penny Street, West Islip, New York 11795.

10. Defendant ALEX PASTORI, at relevant times mentioned, was a Court Officer employed by the NEW YORK STATE UNIFIED COURT SYSTEM, holding the rank of Sergeant, and a supervising officer over Hughes.

11. Upon information and belief, Pastori resides at 21201 43rd Avenue, Bayside New York, 11361.

## BACKGROUND FACTS

12. In or about March 1996, Hughes was hired by Defendant New York State Unified Court System as a Court Officer at the Family Court in Manhattan. Subsequently, Hughes was transferred to the Queens Family Court.

13. In or about 1999, Hughes was transferred to the Nassau County District Court in Hempstead.

14. Throughout his employment at Hempstead, Hughes's supervisor was Major Kevin Anderson until in or about 2004.

15. In or about 2006, Hughes was transferred to the Nassau County District Court in Great Neck where he remained until December 2006.

16. On December 8 2006, Anderson ordered Hughes to return to work in Hempstead, under his supervision.

17. In or about November 2006 through January 2007, Anderson became the Major in charge of the Nassau County District Court Officers.

18. Anderson was subsequently transferred to Nassau County Supreme Court in February 2007.

19. Throughout the course of his employment, Hughes performed his job satisfactorily. Furthermore, Hughes received several letters of commendation and was a union delegate for his union, The Court Officers Benevolent Association of Nassau County (COBANC).

20. Since in or about 2000, Defendants have retaliated against Hughes based upon exercising his rights to freedom of speech, forced Hughes to endure a hostile work environment, discriminated against Hughes based upon his disability, and retaliated against Hughes for complaining of discrimination and retaliation as set forth below.

21. In or about 2003, Anderson mistakenly believed that Hughes reported that Anderson and other Court Officers were engaging in misconduct in connection with their second jobs at Shea Stadium. This was a matter of public concern as it involved wasting taxpayers' dollars.

22. Hughes, however, never made such complaints. As a result of Anderson's mistaken belief that Hughes had reported his alleged misconduct, Anderson told

Case 2:09-cv-04042-ADS-WDW   Document 1   Filed 09/18/09   Page 6 of 16 PageID #: 6

another officer that he was "going to get Hughes fired no matter what he needed to do."

23. For the next several years, Hughes was forced to endure a hostile work environment created by the Defendants that was so permeated with discrimination, retaliation, intimidation, ridicule, and insult that it was sufficiently pervasive to alter the terms and conditions of Hughes's employment. Hughes complained to his superiors and to the Union about such misconduct, on numerous occasions; however nothing was ever done to resolve Hughes's complaints.

24. As a result of such conduct, Hughes became diagnosed with depression, anxiety, and insomnia, and was prescribed medication. Despite his medical condition, Hughes was capable of performing his job and continued to do so satisfactorily.

25. In or about March 2005, Hughes informed the Chief Clerk, Eileen Bianchi, the Vice President of COBANC, John Clancy, and a clerk, about his medical condition.

26. Upon information and belief, as a result, Anderson was informed about Hughes's medical condition.

27. Upon information and belief, when Anderson learned of Hughes's disability, he made it known that he was going to use it against Hughes. As a result, Anderson continued to discriminate against Hughes based upon his disability, created an even more hostile work environment, and retaliated against Hughes as set forth below.

28. Upon information and belief, Joseph Gentissi, a former Court Officer, overheard Anderson saying that Hughes was "nuts" and that Anderson was going to "nail his a** on the cross."

29. In addition, on numerous occasions, Anderson was overheard calling Hughes a "nut job" for no apparent reason whatsoever.

30. Furthermore, Anderson made numerous threatening comments to Hughes. For example, Anderson told Hughes that "the next time you get in the elevator, the cab might not be there." "That's how people get killed."

31. On or about September 23, 2005, Sergeant Pastori falsely accused Hughes of quickly accelerating his vehicle towards Sergeant Pastori; behind the Nassau County District Court, and threatening Sergeant Pastori verbally, in an attempt to harass, discriminate and retaliate against Hughes. Said false charges were brought two years later in a disciplinary hearing either at the direction of, to carry forward with, Major Anderson, Pastori's Supervisor.

32. On or about December 1, 2006, Defendants discriminated and retaliated against Hughes by falsely disciplining Hughes because he had his feet elevated on a desk drawer and for not listening to his supervisor. Hughes, however, received permission, due to a medical injury, to rest his feet on the desk drawer from a clerk.

33. To further harass, discriminate and retaliate against Hughes, on December 7, 2006, Defendants once again falsely disciplined Hughes by claiming that Hughes's hair was touching his collar, his button was undone, and his tie was clipped to his collar.

34. All such allegations were merely pretext to disguise Defendants true discriminatory and retaliatory motives towards Hughes.

35. On or about December 11, 2006, Anderson ordered Hughes to break into his personal locker with a hammer and a screwdriver. Upon information and belief, Anderson's purpose was to bring Hughes up on charges for not having his Class A uniform. However, the uniform was contained in Hughes's locker. Anderson's order was entirely inappropriate, as he ordered Hughes to destroy state property.

36. Furthermore, on December 12, 2006, Anderson removed Hughes's gun because Anderson claimed that Hughes's behavior was not normal, and further disciplined

Hughes because he had "an unauthorized bullet and his magazines were not fully charged." However, all such charges were merely pretext to disguise Defendants true discriminatory and retaliatory motives towards Hughes.

37. As a result of Hughes's gun being removed, Hughes could not work overtime and could not be stationed at certain posts in the building. This was a significant change in the terms and conditions of his employment. Furthermore, Defendants placed Hughes's safety at risk by forcing Hughes to be stationed at certain posts that were dangerous without a weapon.

38. In addition, that same day, to discriminate against Hughes based upon his disability, Anderson told Hughes that an appointment was scheduled for Hughes to see a state psychologist and that upon the psychologist's review, Hughes would be up for review. However, Defendants never scheduled Hughes to see a state psychologist until June 2008.

39. Based upon Anderson's misconduct, Hughes filed a supervisory discrimination grievance on or about January 12, 2007, against Anderson. However, nothing was done to resolve Hughes's complaints.

40. In retaliation for making said grievance and to further discriminate against Hughes based upon his disability, on or about February 5, 2007, Defendant notified Hughes that he was being brought up on charges for the so-called

aforementioned misconduct. However, these charges, including the claim of Sergeant Pastori two years earlier, can only be described as pretext to describe Defendants' true discriminatory and retaliatory motives.

41. A hearing based upon the disciplinary charges commenced in April 2007 and continued through December 2007.

42. During this hearing, Hughes presented evidence demonstrating corruption among Anderson, other Court Officers, and Court employees within the Nassau County Court system.

43. On October 29, 2008, a determination was made by Defendants to terminate Hughes's employment under circumstances leading to an inference that Hughes was being discriminated against based upon his disability, retaliated against Hughes for complaining of discrimination, and retaliated against for exercising his right to freedom of speech during his hearing.

44. As a direct and proximate result of the aforementioned discrimination, the Defendants caused Plaintiff to suffer loss of earnings, and accrued benefits, in addition to suffering great pain, humiliation, as well as physical and emotional damages.

## CLAIMS FOR RELIEF

45. By reason of the foregoing, Defendants have unlawfully discriminated against Plaintiff in his compensation, terms conditions and/or privileges of employment because of his disability, and opposition to discriminatory practices, in that he was subjected to adverse employment actions, a hostile working environment, and an ongoing atmosphere of adverse acts which went unabated in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 *et seq.* and New York Execute Law, The Human Rights Law § 290 *et seq.*

46. Based on the foregoing, the Defendants, while acting under the color of law, deprived Plaintiff Hughes of his rights to freedom of speech in violation of 42 U.S.C § 1983 because the Defendants terminated the Plaintiff's employment in retaliation for Plaintiff exercising his rights to freedom of speech afforded to him by the First Amendment to the Constitution of the United States.

47. The Defendants intentionally committed, condoned or were deliberately indifferent to the aforementioned violations of the Plaintiffs' constitutional rights. Such deliberate indifference may be inferred in the following ways:

a. Defendants' custom or practice of discriminating and/or retaliating against Plaintiff was so persistent and widespread that it constituted the constructive acquiescence of policymakers.

b. Inadequate training/supervision was so likely to result in the discrimination and/or retaliation that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision.

c. Supervisors failed to properly investigate and address allegations of discrimination and/or retaliation.

d. Policymakers engaged in and/or tacitly condoned the discrimination and/or retaliation.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants for all compensatory, emotional, psychological and punitive damages, reinstatement, lost compensation, front pay, back pay, injunctive relief, liquidated damages, and any other damages permitted by law pursuant to the above-referenced causes of action. It is respectfully requested that the Court grant the Plaintiff any other relief to which the Plaintiff is entitled, including but not limited to:

1. Awarding reasonable attorneys fees, costs and disbursements of this action;

2. Issuing a permanent injunction enjoining the Defendants from further abridging the Plaintiff's rights, including but not limited to, an injunction preventing Defendants or any of their agents or employees from providing negative, misleading, or disparaging references pertaining to Plaintiff's employment; and,

3. Granting such other and further relief that to the Court seems just and proper.

**Further**, the Plaintiff requests a trial by jury.

Dated: Carle Place, New York  
August 7 , 2009

The Law Office of Steven A. Morelli, P.C.  
*Attorneys for the Plaintiff*  
One Old Country Road, Suite 347  
Carle Place, New York 11514  
(516) 393-9151

By: _____  
**STEVEN A. MORELLI (SM-4721)**

## **VERIFICATION**

STATE OF NEW YORK  )
                   ) ss.:
COUNTY OF NASSAU   )

THOMAS HUGHES, being duly sworn, states that he has reviewed the foregoing Complaint and that the contents of said Complaint are true to his own knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, he believes them to be true.

_____
THOMAS HUGHES

Duly sworn to before me
this ___ day of August, 2009

_____
NOTARY PUBLIC

JAIME LYNN ECKL
Notary Public, State of New York
No. 02EC6185626
Qualified in Nassau County
Commission Expires April 21, 20__

**EXHIBIT A**

EEOC Form 161 (2/08)     **U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Thomas J. Hughes<br>2 Flo Drive<br>Syosset, NY 11791 | From: | New York District Office<br>33 Whitehall Street<br>5th Floor<br>New York, NY 10004 |
|---|---|---|---|

[ ]    *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 16G-2008-00744 | Holly M. Woodyard,<br>Investigator | (212) 336-3643 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[ ] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[X] Other *(briefly state)*     **Charging Party to Pursue Matter in Court.**

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt **of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that backpay due for any violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

_____     6/22/09

Enclosures(s)     **Spencer H. Lewis, Jr.,**     *(Date Mailed)*
    **Director**

cc:    **New York State, Unified Court System**     Jaime Lynn Eckl Esq.
    **Attn: Michael Colodner**     One Country Rd. Suite 347
    **25 Beaver Street, 11th Fl.**     Carle Place, NY. 11514
    **New York, NY 10004**