# EXHIBIT A

# CV-09 4042

RECEIVED
IN CLERK'S OFFICE
U.S DISTRICT COURT E.D.N.Y

★    SEP 18 2009    ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

THOMAS HUGHES,

                    Plaintiff,

       -against-

NEW YORK STATE UNIFIED COURT SYSTEM,
KEVIN ANDERSON, In his Official Capacity and
Individually, and ALEX PASTORI, In his Official Capacity
and Individually,

                    Defendants.

-------------------------------------------------------------X

Docket No.:

**Verified Complaint**

*Jury Trial Demanded*

# FEUERSTEIN, S

# WALL, M.J.

      Plaintiff THOMAS HUGHES, by and through his attorneys, The Law Office of

Steven A. Morelli, P.C., allege, upon knowledge as to himself and his own actions, and

upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1.     This action is brought against all Defendants pursuant to The Americans with

     Disabilities Act of 1990, 42 U.S.C. § 12112 *et seq.*, the New York Executive

     Law, The Human Rights Law § 290 *et seq*; and contains any other causes of

     action which can reasonably be inferred from the facts set forth herein, to redress

     violations of the Plaintiff's rights as guaranteed by the laws of the United States

     and the State of New York prohibiting unlawful discrimination and retaliation.

2.     This action is also brought pursuant to 42 U.S.C. § 1983 to redress certain

     violations of the Plaintiff's constitutional rights including his rights to equal

     protection of the laws and freedom of speech secured to him by the Fourteenth

     and First Amendments to the Constitution of the United States.

## JURISDICTION

3.      This Court has original jurisdiction over the Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 & 1343, and supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.      Venue is proper pursuant to 28 U.S.C. § 1391.

5.      All conditions precedent to filing suit have been fulfilled. To wit, the Plaintiff filed timely Complaints with New York State Division of Human Rights which was cross-filed with the Equal Employment Opportunity Commission, on or about October 18, 2007, bearing federal charge number 16GA800744.   The EEOC issued Plaintiff Hughes a Notice of Right to Sue, which Plaintiff received on or about June 25, 2009. This action was filed within 90 days of Plaintiff's receipt of the Notice of Right to Sue. Annexed hereto, and hereby incorporated into this Complaint, as Exhibit A, is a copy of Plaintiff's Notice of Right to Sue.

## PARTIES

## <u>PARTIES</u>

6.  Plaintiff THOMAS HUGHES, at all relevant times, was and still is a resident and domiciliary of the County of Nassau in the State of New York. Hughes resides at 2 Flo Drive, Syosset, New York, 11791.

7.  Defendant THE NEW YORK STATE UNIFIED COURT SYSTEM, at all relevant times, was and still is an agency of the government of the State of New York. The Office of the Court Administration, the division of the New York State Unified Court System responsible for the supervision of Court personnel is located at 25 Beaver Street, New York, NY 10004.

8.  Defendant KEVIN ANDERSON, at relevant times mentioned, was Hughes's supervisor and was employed by the NEW YORK STATE UNIFIED COURT SYSTEM.

9.  Upon information and belief, Anderson resides at 58 Penny Street, West Islip, New York 11795.

10.  Defendant ALEX PASTORI, at relevant times mentioned, was a Court Officer employed by the NEW YORK STATE UNIFIED COURT SYSTEM, holding the rank of Sergeant, and a supervising officer over Hughes.

11.    Upon information and belief, Pastori resides at 21201 43rd Avenue, Bayside New York, 11361.

## BACKGROUND FACTS

12.    In or about March 1996, Hughes was hired by Defendant New York State Unified Court System as a Court Officer at the Family Court in Manhattan.  Subsequently, Hughes was transferred to the Queens Family Court.

13.    In or about 1999, Hughes was transferred to the Nassau County District Court in Hempstead.

14.    Throughout his employment at Hempstead, Hughes's supervisor was Major Kevin Anderson until in or about 2004.

15.    In or about 2006, Hughes was transferred to the Nassau County District Court in Great Neck where he remained until December 2006.

16.    On December 8 2006, Anderson ordered Hughes to return to work in Hempstead, under his supervision.

17.    In or about November 2006 through January 2007, Anderson became the Major in charge of the Nassau County District Court Officers.

18.     Anderson was subsequently transferred to Nassau County Supreme Court in February 2007.

19.     Throughout the course of his employment, Hughes performed his job satisfactorily. Furthermore, Hughes received several letters of commendation and was a union delegate for his union, The Court Officers Benevolent Association of Nassau County (COBANC).

20.     Since in or about 2000, Defendants have retaliated against Hughes based upon exercising his rights to freedom of speech, forced Hughes to endure a hostile work environment, discriminated against Hughes based upon his disability, and retaliated against Hughes for complaining of discrimination and retaliation as set forth below.

21.     In or about 2003, Anderson mistakenly believed that Hughes reported that Anderson and other Court Officers were engaging in misconduct in connection with their second jobs at Shea Stadium. This was a matter of public concern as it involved wasting taxpayers' dollars.

22.     Hughes, however, never made such complaints.  As a result of Anderson's mistaken belief that Hughes had reported his alleged misconduct, Anderson told

another officer that he was "going to get Hughes fired no matter what he needed to do."

23.     For the next several years, Hughes was forced to endure a hostile work environment created by the Defendants that was so permeated with discrimination, retaliation, intimidation, ridicule, and insult that it was sufficiently pervasive to alter the terms and conditions of Hughes's employment. Hughes complained to his superiors and to the Union about such misconduct, on numerous occasions; however nothing was ever done to resolve Hughes's complaints.

24.     As a result of such conduct, Hughes became diagnosed with depression, anxiety, and insomnia, and was prescribed medication. Despite his medical condition, Hughes was capable of performing his job and continued to do so satisfactorily.

25.     In or about March 2005, Hughes informed the Chief Clerk, Eileen Bianchi, the Vice President of COBANC, John Clancy, and a clerk, about his medical condition.

26.     Upon information and belief, as a result, Anderson was informed about Hughes's medical condition.

27.     Upon information and belief, when Anderson learned of Hughes's disability, he made it known that he was going to use it against Hughes. As a result, Anderson continued to discriminate against Hughes based upon his disability, created an even more hostile work environment, and retaliated against Hughes as set forth below.

28.     Upon information and belief, Joseph Gentissi, a former Court Officer, overheard Anderson saying that Hughes was "nuts" and that Anderson was going to "nail his a** on the cross."

29.     In addition, on numerous occasions, Anderson was overheard calling Hughes a "nut job" for no apparent reason whatsoever.

30.     Furthermore, Anderson made numerous threatening comments to Hughes. For example, Anderson told Hughes that "the next time you get in the elevator, the cab might not be there." "That's how people get killed."

31.     On or about September 23, 2005, Sergeant Pastori falsely accused Hughes of quickly accelerating his vehicle towards Sergeant Pastori; behind the Nassau County District Court, and threatening Sergeant Pastori verbally, in an attempt to harass, discriminate and retaliate against Hughes. Said false charges were brought two years later in a disciplinary hearing either at the direction of, to carry forward with, Major Anderson, Pastori's Supervisor.

32.     On or about December 1, 2006, Defendants discriminated and retaliated against Hughes by falsely disciplining Hughes because he had his feet elevated on a desk drawer and for not listening to his supervisor. Hughes, however, received permission, due to a medical injury, to rest his feet on the desk drawer from a clerk.

33.     To further harass, discriminate and retaliate against Hughes, on December 7, 2006, Defendants once again falsely disciplined Hughes by claiming that Hughes's hair was touching his collar, his button was undone, and his tie was clipped to his collar.

34.     All such allegations were merely pretext to disguise Defendants true discriminatory and retaliatory motives towards Hughes.

35.     On or about December 11, 2006, Anderson ordered Hughes to break into his personal locker with a hammer and a screwdriver. Upon information and belief, Anderson's purpose was to bring Hughes up on charges for not having his Class A uniform. However, the uniform was contained in Hughes's locker. Anderson's order was entirely inappropriate, as he ordered Hughes to destroy state property.

36.     Furthermore, on December 12, 2006, Anderson removed Hughes's gun because Anderson claimed that Hughes's behavior was not normal, and further disciplined

Hughes because he had "an unauthorized bullet and his magazines were not fully charged." However, all such charges were merely pretext to disguise Defendants true discriminatory and retaliatory motives towards Hughes.

37.     As a result of Hughes's gun being removed, Hughes could not work overtime and could not be stationed at certain posts in the building. This was a significant change in the terms and conditions of his employment. Furthermore, Defendants placed Hughes's safety at risk by forcing Hughes to be stationed at certain posts that were dangerous without a weapon.

38.     In addition, that same day, to discriminate against Hughes based upon his disability, Anderson told Hughes that an appointment was scheduled for Hughes to see a state psychologist and that upon the psychologist's review, Hughes would be up for review. However, Defendants never scheduled Hughes to see a state psychologist until June 2008.

39.     Based upon Anderson's misconduct, Hughes filed a supervisory discrimination grievance on or about January 12, 2007, against Anderson. However, nothing was done to resolve Hughes's complaints.

40.     In retaliation for making said grievance and to further discriminate against Hughes based upon his disability, on or about February 5, 2007, Defendant notified Hughes that he was being brought up on charges for the so-called

aforementioned misconduct. However, these charges, including the claim of Sergeant Pastori two years earlier, can only be described as pretext to describe Defendants' true discriminatory and retaliatory motives.

41.   A hearing based upon the disciplinary charges commenced in April 2007 and continued through December 2007.

42.   During this hearing, Hughes presented evidence demonstrating corruption among Anderson, other Court Officers, and Court employees within the Nassau County Court system.

43.   On October 29, 2008, a determination was made by Defendants to terminate Hughes's employment under circumstances leading to an inference that Hughes was being discriminated against based upon his disability, retaliated against Hughes for complaining of discrimination, and retaliated against for exercising his right to freedom of speech during his hearing.

44.   As a direct and proximate result of the aforementioned discrimination, the Defendants caused Plaintiff to suffer loss of earnings, and accrued benefits, in addition to suffering great pain, humiliation, as well as physical and emotional damages.

## CLAIMS FOR RELIEF

45.     By reason of the foregoing, Defendants have unlawfully discriminated against Plaintiff in his compensation, terms conditions and/or privileges of employment because of his disability, and opposition to discriminatory practices, in that he was subjected to adverse employment actions, a hostile working environment, and an ongoing atmosphere of adverse acts which went unabated in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 *et seq.* and New York Execute Law, The Human Rights Law § 290 *et seq.*

46.     Based on the foregoing, the Defendants, while acting under the color of law, deprived Plaintiff Hughes of his rights to freedom of speech in violation of 42 U.S.C § 1983 because the Defendants terminated the Plaintiff's employment in retaliation for Plaintiff exercising his rights to freedom of speech afforded to him by the First Amendment to the Constitution of the United States.

47.     The Defendants intentionally committed, condoned or were deliberately indifferent to the aforementioned violations of the Plaintiffs' constitutional rights. Such deliberate indifference may be inferred in the following ways:

a.  Defendants' custom or practice of discriminating and/or retaliating against Plaintiff was so persistent and widespread that it constituted the constructive acquiescence of policymakers.

b.  Inadequate training/supervision was so likely to result in the discrimination and/or retaliation that policymakers can reasonably be said to have been deliberately indifferent to the need to provide better training and supervision.

c.  Supervisors failed to properly investigate and address allegations of discrimination and/or retaliation.

d.  Policymakers engaged in and/or tacitly condoned the discrimination and/or retaliation.

**WHEREFORE,** the Plaintiff demands judgment against the Defendants for all compensatory, emotional, psychological and punitive damages, reinstatement, lost compensation, front pay, back pay, injunctive relief, liquidated damages, and any other damages permitted by law pursuant to the above-referenced causes of action. It is respectfully requested that the Court grant the Plaintiff any other relief to which the Plaintiff is entitled, including but not limited to:

1. Awarding reasonable attorneys fees, costs and disbursements of this action;

2. Issuing a permanent injunction enjoining the Defendants from further abridging the Plaintiff's rights, including but not limited to, an injunction preventing Defendants or any of their agents or employees from providing negative, misleading, or disparaging references pertaining to Plaintiff's employment; and,

3. Granting such other and further relief that to the Court seems just and proper.

**Further,** the Plaintiff requests a trial by jury.

Dated: Carle Place, New York
   August 7 , 2009

       The Law Office of Steven A. Morelli, P.C.
       *Attorneys for the Plaintiff*
       One Old Country Road, Suite 347
       Carle Place, New York 11514
       (516) 393-9151

       By:
       **STEVEN A. MORELLI (SM-4721)**

## __VERIFICATION__

STATE OF NEW YORK     )
                           ) ss.:

COUNTY OF NASSAU     )

     THOMAS HUGHES, being duly sworn, states that he has reviewed the foregoing Complaint and that the contents of said Complaint are true to his own knowledge, except as to matters therein stated to be alleged upon information and belief and, as to those matters, he believes them to be true.

                                             THOMAS HUGHES

Duly sworn to before me
this   day of August, 2009

       NOTARY PUBLIC

          JAIME-LYNN ECKL
     Notary Public, State of New York
         No. 02EC6185626
      Qualified in Nassau County
  Commission Expires April 21, 20__

# EXHIBIT B



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------X
THOMAS HUGHES,                                              Docket No.:

                  Plaintiff,                      **Amended Complaint**

      -against-                                              *Jury Trial Demanded*

KEVIN ANDERSON, In his Official Capacity and
Individually, and ALEX PASTORI, In his Official Capacity
and Individually,
                Defendants.
-------------------------------------------------------------------------X

      Plaintiff THOMAS HUGHES, by and through his attorneys, The Law Office of

Steven A. Morelli, P.C., allege, upon knowledge as to himself and his own actions, and

upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1.     In 1996, Plaintiff Thomas Hughes began working as a Court Officer for the New

York Unified Court System ("UCS"). Over the next eleven years, Mr. Hughes

proved himself to be a capable and dependable employee. Yet, despite his

outstanding performance, Mr. Hughes was discriminated against by his direct

supervisor, Major Kevin Anderson, for his disability. He was also retaliated

against by Major Anderson because of statements Mr. Hughes made to Chief

Clerk Eileen Bianchi regarding Major Anderson's practice of leaving work early

and falsifying his timesheets.

2.     As more fully set forth below, Major Anderson discriminated against Mr. Hughes

because of his disability, and retaliated against him for (1) filing a formal

grievance complaining of said discrimination and retaliation, and (2) exercising his First Amendment right and making the statements to the Chief Clerk. As a result, Major Anderson's discriminatory and retaliatory conduct violated New York Executive Law §290 et seq., and Mr. Hughes's First Amendment rights.

## **JURISDICTION**

3.  This Court has original jurisdiction over the Plaintiff's federal law claims pursuant to 28 U.S.C. §§ 1331 & 1343, and supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.  Venue is proper pursuant to 28 U.S.C. § 1391.

5.  All conditions precedent to filing suit have been fulfilled. To wit, the Plaintiff filed timely Complaints with New York State Division of Human Rights which was cross-filed with the Equal Employment Opportunity Commission, on or about October 18, 2007, bearing federal charge number 16GA800744. The EEOC issued Plaintiff Hughes a Notice of Right to Sue, which Plaintiff received on or about June 25, 2009. This action was filed within 90 days of Plaintiff's receipt of the Notice of Right to Sue. Annexed hereto, and hereby incorporated into this Complaint, as Exhibit A, is a copy of Plaintiff's Notice of Right to Sue.

## PARTIES

6.    Plaintiff THOMAS HUGHES, at all relevant times, was and still is a resident and domiciliary of the County of Nassau in the State of New York. Hughes resides at 2 Flo Drive, Syosset, New York, 11791.

7.    Defendant KEVIN ANDERSON, at relevant times mentioned, was Hughes's supervisor and was employed by the NEW YORK STATE UNIFIED COURT SYSTEM. Upon information and belief, Anderson resides at 58 Penny Street, West Islip, New York 11795.

8.    Defendant ALEX PASTORI, at relevant times mentioned, was a Court Officer employed by the NEW YORK STATE UNIFIED COURT SYSTEM, holding the rank of Sergeant, and a supervising officer over Hughes. Upon information and belief, Pastori resides at 21201 43rd Avenue, Bayside New York, 11361.

## BACKGROUND FACTS

9.    In or about March 1996, Mr. Hughes was hired by the New York State Unified Court System ("UCS") as a Court Officer at the Family Court in Manhattan. Subsequently, Mr. Hughes was transferred to the Queens Family Court.

10.    In or about 1999, Mr. Hughes was transferred to the Nassau County District Court in Hempstead. From 1999-2004, Mr. Hughes's supervisor was Major Kevin Anderson.

11.     Throughout the course of his employment, Hughes performed his job satisfactorily. Mr. Hughes received several letters of commendation and was a union delegate for his union, The Court Officers Benevolent Association of Nassau County ("COBANC").

12.     In or around 2003, Mr. Hughes made statements to Chief Clerk Eileen Bianchi regarding Major Anderson and his close network of Court Officers. Specifically, Mr. Hughes told Ms. Bianchi that Major Anderson and others would routinely leave the Court early in order to arrive on time for their second jobs as security guards at Shea Stadium. He also told her that they would not sign out from their timesheets as they were supposed to. Mr. Hughes told Ms. Bianchi that he had heard other officers complain about it, and that something should be done. This was a matter of public concern as it involved wasting taxpayers' dollars.

13.     Upon information and belief, Major Anderson's misconduct was eventually investigated internally.

14.     Upon information and belief, Major Anderson heard that Mr. Hughes was making statements about him to Court officials, and blamed Mr. Hughes for the investigation. One at least one occasion, Major Anderson told another officer that he was "going to get Hughes fired no matter what he needed to do."

15.    In 2004, Major Anderson was removed from the Nassau County District Court in Hempstead so he could work in the courtroom of Administrative Judge Anthony Marano at the Supreme Court in Mineola.

16.    For the next several years, Mr. Hughes was forced to endure a hostile work environment created by the Major Anderson's close network of Court Officers that was so permeated with discrimination, retaliation, intimidation, ridicule, and insult that it was sufficiently pervasive to alter the terms and conditions of Hughes's employment.

17.    In April 2004, Mr. Hughes wrote a memorandum to COBANC President Anthony Longo complaining that Major Anderson was choosing particular Sergeants to review Mr. Hughes's performance in order to give him negative evaluations. Nothing was ever done to resolve Hughes's complaints.

18.    In or about March 2005, as a result of the harassment, Mr. Hughes began suffering from depression, anxiety and sleep disorder. He was prescribed medication for his condition. He informed Chief Clerk Eileen Bianchi and Vice President of COBANC John Clancy about his medical condition.

19.    Upon information and belief, as a result, Major Anderson was also informed about Mr. Hughes's medical condition.

20.    Upon information and belief, when Major Anderson learned of Mr. Hughes's disability, he made it known that he was going to use it against him.  As a result, Major Anderson continued to discriminate against Mr. Hughes based upon his disability, created an even more hostile work environment, and retaliated against Hughes as set forth below.

21.    Upon information and belief, Joseph Gentissi, a former Court Officer, overheard Anderson saying that Hughes was "nuts" and that Anderson was going to "nail his a** on the cross."

22.    In addition, on numerous occasions, Major Anderson was overheard calling Hughes a "nut job" for no apparent reason whatsoever.

23.    Furthermore, Major Anderson made numerous threatening comments to Hughes. For example, Anderson told Hughes that "the next time you get in the elevator, the cab might not be there."  "That's how people get killed."

24.    On or about September 23, 2005, Sergeant Pastori accused Mr. Hughes of quickly accelerating his vehicle towards him behind the Nassau County District Court. He also accused Mr. Hughes of threatening him. These accusations were categorically false, and were brought to further harass Mr. Hughes.  Upon information and belief, they were brought at the direction of Major Anderson.

25.     In or about February 2006, Mr. Hughes was transferred to the Nassau County District Court in Great Neck where he remained until December 2006, without incident or complaint. Mr. Hughes was transferred by Chief Clerk Bianchi. Ms. Bianchi told Mr. Hughes that he was being transferred because she was concerned that Major Anderson was going to go after him.

26.     In November 2006, Major Anderson transferred back to the Nassau County District Court. He was now in charge of all Court Officers who worked in Hempstead and Great Neck.

27.     On December 8 2006, less than after returning to the Nassau County District Court, Major Anderson ordered Mr. Hughes to return to work in Hempstead, under his direct supervision.

28.     On or about December 11, 2006, Anderson ordered Mr. Hughes to break into his personal locker with a hammer and a screwdriver. Upon information and belief, Anderson's purpose was to bring Hughes up on charges for not having his Class A uniform. However, the uniform was contained in Hughes's locker. Major Anderson's order was entirely inappropriate, as he ordered Hughes to destroy state property.

29.     On December 12, 2006, to discriminate against Mr. Hughes because of his disability, and to retaliate against Mr. Hughes for the statements made to Ms.

Bianchi years earlier, Major Anderson ordered the removal of Mr. Hughes's gun. Major Anderson claimed that Hughes's behavior in the prior two months was not normal, even though he had only been supervising Mr. Hughes for the previous four days.

30.    Major Anderson further disciplined Mr. Hughes because he had "an unauthorized bullet and his magazines were not fully charged." However, all such charges were merely pretext to disguise Defendants true discriminatory and retaliatory motives towards Hughes.

31.    As a result of his gun being removed, Mr. Hughes could not work overtime and could not be stationed at certain posts in the building. This was a significant change in the terms and conditions of his employment.

32.    That day, Major Anderson told Mr. Hughes that there would be an appointment scheduled for him to be evaluated by a State psychologist. No appointment was ever scheduled for Mr. Hughes. Rather, in June 2008, he scheduled an appointment on his own. This suggests that the statements made by Major Anderson were simply pretext to disguise the true discriminatory and retaliatory nature of the action.

33.    On or about January 12, 2007, Mr. Hughes filed a supervisory discrimination grievance against Major Anderson, complaining of the discrimination and

retaliation he was being subjected to.  Specifically, Mr. Hughes stated that he was being "severely harassed" by Major Anderson.

34.     On February 5, 2007, less than one month after filing a grievance against Major Anderson for his retaliatory conduct, Mr. Hughes was notified that *he* was being brought up on disciplinary charges for misconduct. Upon information and belief, Major Anderson played a major role in having the OCA bring these charges against Mr. Hughes.

35.     These charges included counts brought by Sergeant Pastori, including counts charging that Mr. Hughes (1) accelerated and swerved his vehicle towards him; (2) that he was insubordinate when he yelled at an off duty officer; and (3) that he "refused a bank run." Mr. Hughes was not found guilty of any of the foregoing charges. This clearly suggests that Pastori was harassing Mr. Hughes based on his disability. This contributed to the hostile work environment Mr. Hughes was forced to endure.

36.     Upon information and belief, in 2005, Sergeant Pastori recorded information about Mr. Hughes and sent it to Major Anderson. This was while Major Anderson was at the Supreme Court in Mineola and had no relevant connection to Mr. Hughes.

37.    In having these charges brought, Major Anderson was retaliating against Mr. Hughes for (1) his statements to Eileen Bianchi, which eventually led to an OCA investigation into Major Anderson's timekeeping practices, and (2) for bringing a grievance against him in January 2007, complaining of the harassment and retaliation he was being subjected to.

38.    The charges brought against Mr. Hughes were baseless, and pretext to disguise the true motives of Major Anderson.

39.    A hearing based upon the disciplinary charges commenced in April 2007 and continued through December 2007.

40.    During this hearing, Mr. Hughes presented evidence demonstrating corruption among Major Anderson, other Court Officers, and Court employees within the Nassau County Court system.

41.    On October 29, 2008, a determination was made by Defendants to terminate Mr. Hughes's employment. This termination was under circumstances leading to an inference that Mr. Hughes was being discriminated against based upon his disability. Additionally, the termination was in retaliation for Mr. Hughes making statements to the Chief Clerk regarding Major Anderson's misconduct, for complaining about the discrimination, for filing the grievance against Major

Anderson in January 2007, and for exercising his right to freedom of speech during his hearing.

42.    As a direct and proximate result of the aforementioned discrimination, Defendant Major Anderson caused Mr. Hughes to suffer loss of earnings, and accrued benefits, in addition to suffering great pain, humiliation, as well as physical and emotional damages.

## CLAIMS FOR RELIEF

43.    By reason of the foregoing, Defendant Major Anderson unlawfully discriminated against Mr. Hughes in his compensation, terms conditions and/or privileges of employment because of his disability, and opposition to discriminatory practices, in that he was subjected to adverse employment actions, a hostile working environment, and an ongoing atmosphere of adverse acts which went unabated in violation of New York Execute Law § 290 et seq.

44.    Based on the foregoing, the Defendant Major Anderson, while acting under the color of law, retaliated against Mr. Hughes for complaining of discrimination, in violation of New York Execute Law § 290 et seq.

45.    Based on the foregoing, the Defendant Major Anderson, while acting under the color of law, retaliated against Mr. Hughes for exercising his First Amendment right to freedom of speech

**WHEREFORE,** the Plaintiff demands judgment against the Defendants for all compensatory, emotional, psychological and punitive damages, reinstatement, lost compensation, front pay, back pay, injunctive relief, liquidated damages, and any other damages permitted by law pursuant to the above-referenced causes of action. It is respectfully requested that the Court grant the Plaintiff any other relief to which the Plaintiff is entitled, including but not limited to:

1. Awarding reasonable attorneys fees, costs and disbursements of this action;

2. Issuing a permanent injunction enjoining the Defendants from further abridging the Plaintiff's rights, including but not limited to, an injunction preventing Defendants or any of their agents or employees from providing negative, misleading, or disparaging references pertaining to Plaintiff's employment; and,

3. Granting such other and further relief that to the Court seems just and proper.

**Further,** the Plaintiff requests a trial by jury.

Dated: Carle Place, New York  
       April 14 , 2010

The Law Office of Steven A. Morelli, P.C.  
*Attorneys for the Plaintiff*  
One Old Country Road, Suite 347  
Carle Place, New York 11514  
(516) 393-9151

**STEVEN A. MORELLI (SM-4721)**